UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-573-H

JEAN A. BREWER;
GERALD W. FLETCHER; and
TOPAZA "JO" E. WHITE                                                      PLAINTIFFS


V.


BRANCH BANKING & TRUST CORPORATION                                       DEFENDANT


**MEMORANDUM OPINION**


Plaintiffs, Jean Brewer, Gerald Fletcher and Topaza White, have filed this class action complaint against Defendant, Branch Banking & Trust Corporation ("BB&T"), alleging that, after completing its merger with the Bank of Louisville (the "Bank"), BT&T (1) breached its contractual obligations to the Bank's employees by discontinuing compensation for accrued, unused personal and sick days and (2) failed to compensate the Bank's employees in accordance with the Bank's accrued paid program in violation of KRS 337.010, *et seq.*  BB&T moved to dismiss the first purely contractual claim on the grounds that the sick and personal day policy does not create any employment contract rights or obligations.  It moved to dismiss the second state statutory claim on the grounds that the same statutory scheme bars recovery without prior submission of their claims to the Kentucky Secretary of Labor.

After reviewing the initial memoranda, the Court scheduled a conference to discuss the issues.  Thereafter, the Court requested the parties submit supplemental memoranda concerning whether any employee rights had vested.  The parties having responded appropriately, the Court

now considers the pending motions.

I.

Plaintiffs are all former and long time employees of the Bank.  Under a policy implemented in 1976 and contained in its employee handbook, the Bank allowed employees to accrue one and half days every two months of active, continuous employment or nine days per year.  Under the policy, employees near retirement age could use any accrued sick days to retire earlier than age 65 or, alternatively, to retire after age 65 and receive a lump sum payment for the accrued days.  In 1998, the Bank distributed a brochure which described revisions to the sick day policy and permitted additional absences under the policy for "important personal and family matters."

The Bank incorporated the changes to its leave policy into the employee handbook.  The handbook contained a number of disclaimers and special conditions:

> [The manual] is not considered an expressed or implied contract between the Bank and any of its employees.
>
> Bank of Louisville retains the right to change or modify the information in this manual at any time.  Employees will be given notice when changes are made.

Other provisions limited the use of personal and sick days to specified circumstances, required approval prior for use, limited the accrual of sick days and provided for their forfeiture upon termination of employment.

Another portion of the employee handbook concerned payments to employees for accumulated sick days.  Several pertinent provisions apply:

> Bank of Louisville has established the Severance Pay Program to financially assist employees whose jobs are eliminated through a reduction in force or economic layoff.

2

Only employees having one continuous year of employment would be eligible.  The Bank kept

track of the accrued days for each employee.

In March, 2002, BB&T merged with the Bank and assumed all of its liabilities and

obligations.  In August, 2002, BB&T announced that it would discontinue the Personal and Sick

Day Policy as well as the Severance Pay Program.  Consistent with this announcement, BB&T

has not paid Plaintiffs for their personal and sick days.  Plaintiffs say that they are entitled to

payment for the sick or personal days already accrued.

II.

No one seems to dispute that specific statutory claims under KRS 337 must be initially

filed with the Secretary of the Labor Cabinet to resolve questions of fact.  *McMichael v. Falls*

*City Towing Co.*, 199 F.Supp.2d 632, 636 (W.D. Ky. 2002); *Hasken v. City of Louisville*, 173

F.Supp.2d 654, 662 (W.D. Ky. 2001).  Whether these Plaintiffs must submit their particular

claim to the Secretary more correctly turns on whether that wage claim emanates from contract

or from the statute.  *Noel v. Season-Sash, Inc.,* Ky. App., 722 S.W.2d 901, 902 (1986).  *Noel*

suggests that those wage claims emanating from KRS 337.020 through 337.405 must first be

submitted to the Secretary.  *Id.*  Other cases confirm this principle.  Each involved a specific

claim for compensation required in Chapter 337.  *McMichael* concerned a claim for overtime

wages under KRS 337.285.  *Hasken* also concerned an overtime wage claim.  *Thompson v.*

*Kosair Children's Hosp.*, No. 3:98CV-400-S, 2000 WL 34248864 (W.D. Ky. 2000), concerned

violations of Chapter 337 concerning lunch periods and breaks.  Thus, in each of these three

cases plaintiffs claimed relief under the specific provisions of Chapter 337.

Here, Plaintiffs do not allege any specific violation of KRS 337 as a basis for their

3

compensation.  Rather, they claim compensation in accordance with a "Personal/Sick Days

Program."  To resolve this claim the Court must determine whether Plaintiffs are entitled to

payment pursuant to that Program.  Such a determination does not concern the requirements of

KRS 337.020 through 337.405.  Therefore, the requirement in KRS 337.310(1) that factual

issues be determined first by the Secretary, simply does not apply.  Accordingly, the Court

concludes that Kentucky courts would not require submission of claims in Count I to the

Secretary for factual determination.

This precise issue is now before the Kentucky Supreme Court on discretionary review.

In the underlying proceedings the Kentucky Court of Appeals expressed similar reasoning on

this issue in an unpublished opinion.

> Every employee will have either an express or implied contract for payment of
> compensation from his employer for the work that he performs.  There is no
> statutory basis or logical reason to interpret Chapter 337 as the trial court has
> done, so that the application of the exclusive jurisdiction of the administrative
> procedures in Chapter 337 turns on whether the employee was an employee-at-
> will.

*Smith v. Housing Authority of Middlesborough*, Ky. App. No. 2002-CA-000738-MR, 2003 WL

22416761, at *3 (2003).  The Court of Appeals concluded that "the only reasonable

interpretation of Chapter 337 is . . . that its administrative jurisdictional limitations only apply

when the employee's claim involves an unpaid, *statutorily*-mandated wage."  *Id.* (emphasis

added).  The Court generally agrees with this reasoning.  Because the legal issue presented in

this motion is currently under review by the Kentucky Supreme Court, the Court will

provisionally deny Defendant's motion to dismiss Count I pending the Kentucky Supreme

Court's resolution of the issue.  Count II presents a slightly different issue.  That claim is similar

to the first except that it seeks the statutory relief provided for in KRS 337.385, which includes

double damages, costs and attorney's fees.  That statute states in pertinent part:

> Any employer who pays any employee less than wages and
> overtime compensation to which such employee is entitled under
> or by virtue of KRS 337.020 to 337.285 shall be liable to such
> employee affected for the full amount of such wages and overtime
> compensation, less any amount actually paid to such employee by
> the employer, for an additional equal amount as liquidated
> damages, and for costs and such reasonable attorney's fees as may
> be allowed by the court.

By its terms, the statute allows double damages for a violation of those provisions inclusive of

KRS 337.020 through KRS 337.285.  Plaintiffs do not appear to have alleged a violation of those

provisions.  If they did, then Plaintiff must first bring such claims before the Secretary.  If not,

they cannot obtain the relief allowed in KRS 337.385(1).  In either case, Count II must be

dismissed.

III.

Count I of the complaint presents a breach of contract claim based upon BB&T's

decision to discontinue the Bank's sick and personal day policy.  Defendant has moved to

dismiss that claim on the grounds that the Bank's employee handbooks and policies do not create

employment contract rights or obligations.  As it happens, the analysis of the breach of contract

issues always returns to the actual language of the Bank's promises.

Unless an employment agreement provides otherwise, Kentucky law holds that relations

between employers and their employees are terminable at will by either party.  *Firestone Textile*

*Co. Div., Firestone Tire and Rubber Co. v. Meadows*, Ky., 666 S.W.2d 730, 731 (1983).  The

mere existence of an employee handbook does not create a contract for permanent employment.

Only specific language contained in it can do so.  Otherwise, the handbook creates an obligation

to provide benefits only under the terms described.  *McCart v. Brown-Forman Corp.*, 713

5

F.Supp. 981 (W.D. Ky. 1988).  Those obligations, likewise, are terminable under their own terms.

A.

Plaintiffs argue that the employee handbook creates a contract as to the benefits it describes.  To agree with this statement, however, does not mean that Plaintiffs can prevail in their claims. The Bank employee handbook described certain employee benefits for sick and personal days and for payment of accumulated days.  The handbook specifically disclaims the creation of a contract for permanent employment.  In other words, both the term of employment and the benefits of employment are continued on an at-will basis.  Moreover, the handbook specifically advises employees that the Bank may "change or modify" any of the "information in the manual at any time."  Thus, under a plain reading of the handbook, the Bank, or its successor BB&T, could alter the sick day and accumulated leave policy at any time upon notice to employees.  That is precisely the action that BB&T has taken.  Therefore, BB&T's change to its employee benefit program does not violate any promise contained in the prior employee handbook.  Because BB&T terminated the benefits in a manner that the handbook allows, nothing remains for a jury to resolve.

B.

The Court had thought that some of Plaintiffs' benefits may have vested, thus creating a right to those benefits already earned and requested supplementary memoranda discussing that issue.  Defendants have cited authority suggesting the benefits at issue here are not vested. Plaintiffs do not address this issue in their supplemental memoranda and the Court's subsequent review of the case law suggests a reason.

The Kentucky Supreme Court has discussed this issue, albeit somewhat indirectly in *Berrier v. Bizer*, Ky., 57 S.W.3d 271, 281-82 (2001).  It noted that employees have no inherent right to payment for unused vacation days.  Whether an employee retains such a right depends entirely upon the agreements between the employee and the employer.  *Id.*  In our circumstances, employees attained the right to vacation day compensation only under the conditions set forth in the employee handbook.  Those conditions, among them the requirement that an employee reach retirement age, have not occurred.  The employer retained the right to alter the benefits and have now done so.  Therefore, Plaintiffs' benefits have not vested.

C.

Plaintiffs' remaining argument is that the doctrine of promissory estoppel precludes denial of benefits already accrued, as distinguished from vested.  Plaintiffs say that the Bank induced its employees to forego taking personal and sick days with the promise of payments upon retirement.  Having worked rather than taken the paid personal days, Plaintiffs argue they will now lose the accrual and early retirement due to BB&T's action.

Kentucky courts have endorsed the doctrine of promissory estoppel.  *McCarthy v. Louisville Cartage Co., Inc.*, Ky. App., 796 S.W.2d 10, 11-12 (1990).  This doctrine provides an equitable rather than a legal basis for enforcing promises which are usually oral or gratuitous in nature.  It is not founded upon the need to establish a contract, but rather upon a promise, reliance and forbearance.  To establish a prima facie case of the promissory estoppel in Kentucky, one must show the following: (1) conduct, including acts, language and silence, amounting to a misrepresentation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must

7

act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied upon his conduct to his detriment. *Gray v. Jackson Purchase Prod. Credit Ass'n*, Ky. App., 691 S.W.2d 904, 906 (1985).  The Court's review of the record reveals that Plaintiffs cannot satisfy the first element of such a claim.

The Bank's representations are completely in writing.  It made no representation that the benefit program was permanent or vested.  Though Plaintiffs may have reasonably assumed that the benefit package would remain unchanged, the handbook actually stated just the opposite–that the benefits could be changed.  Finally, Plaintiffs do not allege any facts concealed nor any facts known only to the Bank.  Thus, on its face, our circumstances neither fit the typical profile of promissory estoppel, nor do they prove its necessary elements.

A good comparison is found in a case that Plaintiffs cite.  *Weesner v. Electric Power Bd. of Chattanooga*, Tenn. App., 344 S.W.2d 766 (1961).  In that case, the Tennessee Court of Appeals applied the doctrine of promissory estoppel where the company induced employees to remain with it by stating that changes to the company's pension plan would not affect employee rights to full social security benefits.  Subsequently, the employees learned that they would not receive their full social security benefits.  Therefore, the company's representations were inaccurate.  Under Tennessee law, the doctrine of promissory estoppel allowed the employees to sue for their lost benefits.  No doubt Kentucky law would require a similar result.

The differences between our case and *Weesner* are instructive.  In *Weesner* the employees sued on the basis of a misrepresentation contained in the plan, not on the basis of a change to the plan.  In *Weesner*, as in our case, the employer reserved the right to change the benefit package.  However, having the right to change the benefit package did not give the

employer the right to also misrepresent the benefit package.  Thus, in *Weesner* the allegation of

misrepresentation satisfies the first element of promissory estoppel.  Here, Plaintiffs do not sue

upon a misrepresentation of the benefits.  Rather, they sue upon a change to the benefits.  The

written documents permitted BB&T to make such a change.  To make a contractually allowed

change does not support the application of promissory estoppel.

IV.

This result may seem somewhat harsh: that an employer can promise benefits in the

future and then change its mind and eliminate those benefits.  Nevertheless, the law is absolutely

clear than an employer may take such action so long as he advised the employees that the

promised benefits were subject to change and so long as the employer makes no false

representations about those benefits that induce employees to remain.  The Bank complied as to

the former and Plaintiffs make no allegation as to the latter.

In truth, this result is neither surprising nor unique.  It is entirely consistent with the

analogous rules governing ERISA employee welfare benefits plans.[1]  Employers may choose to

vest welfare benefits, but are not required to do so. 29 U.S.C. § 1051(1).  "Employers or other

plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or

terminate welfare plans."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).  One

must look to "clear and express language of the plan documents to show an intent to vest."  *See*

*Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).  Following precisely such

a process, this Court has found that BB&T was entirely within its rights to alter, change or

---

[1] For purposes of analogy, the benefits at issue here are similar to those described as an employee welfare plan in 29 U.S.C. § 1002(1)(A).  They have little resemblance to an employee pension plan as described in § 1002(2)(A).  Pension funds generally have more rigid vesting requirements.  *See Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90-91 (1983).

9

eliminate employee benefits which the Bank previously provided and which had not vested in

any particular employee.

The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record