UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-573-H

JEAN A. BREWER;                                                                          PLAINTIFFS
GERALD W. FLETCHER; and
TOPAZA "JO" E. WHITE

V.

BRANCH BANKING & TRUST CORPORATION                  DEFENDANT

**MEMORANDUM OPINION**

The Court now considers Defendant Branch Banking & Trust Company's ("BB&T") motion to dismiss the remaining claims of two Plaintiffs, Jean A. Brewer and Topaza "Jo" E. White. BB&T argues that an election and release severance agreement (the "Agreement") that both Brewer and White signed in September, 2002 bars their claims. The Court has had the benefit of excellent memoranda from the parties. For the reasons that follow, the Court concludes that the claims of Brewer and White are barred pursuant to the terms of the Agreement.

I.

The Court has previously recited at length the detailed facts of this case. For purposes of this opinion, the following facts are relevant. Plaintiffs Brewer and White (collectively referred to as "Plaintiffs" for purposes of this opinion) are former employees of the Bank of Louisville. BB&T merged with Bank of Louisville in March 2002 and assumed all liabilities of BB&T pursuant to the terms of the merger. In August 2002, BB&T announced that it would not

continue the sick and personal day policy of Bank of Louisville. Plaintiffs have filed claims relating to BB&T's discontinuation of that policy. In its memorandum opinion dated May 13, 2005, this Court held, among other things, that Plaintiffs' rights under the sick and personal day policy were not vested. In its memorandum opinion dated August 26, 2005, this Court held that only the promissory estoppel claims of the Plaintiffs remain in this litigation.

Brewer and White each received the Agreement in July 2002, and each signed it in September 2002. The Agreement for each was identical except for the amount of severance each Plaintiff received – White received total payment of $10,543.50, and Brewer received $20,849.73. The relevant portion of the Agreement reads as follows:

> In exchange for severance benefits, I (and anyone acting on my behalf) agree to give up every past and present right or claim of any kind, whether legal, equitable, or otherwise, that is related to my employment with the Company . . . I give up such rights and claims against the Company . . . and agree not to file a lawsuit or initiate any proceeding related to such rights and claims against any of them.
>
> These rights and claims include, but are not limited to, those which could arise under Title VII of the Civil Rights Act of 1964, as amended, or any other federal, state or local law, statute, or regulation, claims based upon any express or implied contract, claims for wrongful or retaliatory discharge, or any tort or other common-law claims. However, I keep my right to (1) receive severance benefits under the terms of this Election and Release and the Plan, (2) receive retirement benefits under the terms of any retirement plan in which I have earned a vested benefit . . . .

The Plaintiffs each acknowledged the following in the Agreement:

> (1) THAT I HAVE BEEN TOLD THAT I HAVE UP TO FORTY-FIVE (45) DAYS TO REVIEW AND CONSIDER . . . THIS ELECTION AND RELEASE FORM AND THAT I HAVE BEEN TOLD IN WRITING TO DISCUSS THEM WITH MY ATTORNEY BEFORE SIGNING THIS ELECTION AND RELEASE;
>
> (2) THAT I HAVE BEEN TOLD THAT I HAVE SEVEN (7) DAYS FOLLOWING MY SIGNING OF THIS ELECTION AND RELEASE FORM TO

    REVOKE OR CANCEL IT . . .

    (8) THAT I SIGN THIS FORM AS MY OWN FREE ACT AND DEED AND THAT I HEREBY RELEASE MY RIGHTS AND CLAIMS AS SET FORTH ABOVE IN EXCHANGE FOR THE SEVERANCE PAYMENT REFERRED TO ABOVE, WHICH SEVERANCE PAYMENT IS NOT SOMETHING TO WHICH I AM ALREADY ENTITLED.

(emphasis in original).

    Following BB&T's instant motion, the Court ordered Plaintiffs to respond and to identify any legal issues or potentially discoverable evidence that could defeat BB&T's motion. Plaintiffs did so, primarily arguing that the Agreement should be rescinded on the grounds of mutual mistake.

II.

    This Court reviews a motion for judgment on the pleadings under the same standard as review under Rule 12(b)(6); the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). BB&T has attached the Agreement to its Motion for Leave to File an Amended Answer dated February 14, 2006. The authenticity of the Agreement is undisputed, and it is clearly central to the Plaintiffs' claims. Accordingly, it is appropriate for the Court to consider the Agreement. *See, Weiner v. Klais and Co., Inc.*, 108 F.3d 86 (6th Cir. 1997) ("a defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (internal citations omitted).

3

III.

On its face, the clear and unambiguous language of the Agreement appears dispositive of Plaintiffs' claims. The Agreement states that the Plaintiffs each "give up every past and present right or claim of any kind, whether legal, equitable, or otherwise, that is related to [their] employment with the Company . . . ." This statement clearly covers Plaintiffs' promissory estoppel claims. Plaintiffs make two arguments to avoid this result. First, Plaintiffs assert their right to pursue their sick and personal day program benefits under the section of the Agreement that provides "I keep my right to . . . receive retirement benefits under the terms of any retirement plan in which I have earned a vested benefit . . . ." For this provision to apply, the sick and personal day program must be a "retirement benefit" and Plaintiffs' rights must be "vested." For purposes of this discussion only, the Court will assume that the program is a "retirement benefit." Even so, this Court has already determined that Plaintiffs' rights under that program were not vested. *See* Mem. Op. and Order dated May 13, 2005. Therefore, the "vested retirement benefit" exclusion under the Agreement is inapplicable under the law of the case.

Plaintiffs also argue that the Agreement should be rescinded on the grounds of mutual mistake. Plaintiffs argue that both they and BB&T believed at the time the Agreement was signed that their benefits under the sick and personal day program were vested. Naturally, BB&T strongly disputes that assertion. However, even if true, and leaving aside questions regarding the admissibility of any such evidence under the parol evidence rule, such a mutual mistake would not provide a basis for rescission because the mistake is one of law, not fact. Both parties were aware of all relevant facts surrounding the sick and personal day program, and the question of whether those benefits were vested is a legal question – one that was decided by

4

this Court in its May 13, 2005 opinion.

The Court can find no authority, nor have Plaintiffs cited any authority for the proposition that mutual mistake of law is grounds for rescission of an otherwise valid contract in Kentucky. To the contrary, courts seem to agree that only a mistake of fact is grounds for rescission. *See, e.g., Bar-Del, Inc. v. Oz, Inc.*, 850 S.W.2d 855, 856 (Ky. Ct. App. 1993) (upholding circuit court's decision that mutual mistake was of fact, not of law, and accordingly contract could be rescinded); *Murphy v. Torsrick*, 309 S.W.2d 767, 770 (Ky. 1958) ("A mistake, in order that it may affect a contract, must be a mistake of fact. A mistake of law will not affect enforceability.") (citing *Sadler v. Carpenter*, 251 S.W.2d 840, 842 (Ky. 1952)); *Burns v. Reynolds Metal Co.*, 861 F.2d 719 (6th Cir. 2005) (unpublished disposition) (Interpreting Kentucky law, the Court stated "[t]he 'mistake' upon which plaintiffs rely concerns the legal effect of the written contract . . . [t]hus, their mistake was one involving an interpretation of a contract. This is clearly a mistake of law. For this reason, plaintiffs may not argue that the written contract should be rescinded because of mutual mistake.").

Nothing about the handling of this transaction shouts unfairness. Plaintiffs each took more than thirty days to review the Agreement, they had an opportunity to revoke their consent; the terms of the Agreement are clear; and each received considerable compensation in exchange for the release of claims against BB&T. The Court has found no cases where a severance agreement has been rescinded under even remotely similar circumstances. *See, e.g. Bradley v. Chiron Corp*, 136 F.3d 1317 (Fed. Cir. 1998) (claims by scientist against company with which he had entered settlement agreement dismissed notwithstanding scientist's claims of mistake of fact or law, because agreement clearly provided for release of all claims against company);

*Pierce v. Santa Fe Railroad Co.*, 65 F.3d 562 (7th Cir. 1995) (court held that a release in which a former employee relinquished "any and all claims of any nature" against the employer was unambiguous and valid, even though the employee alleged that the employer's director of administration employer had told him that the release would not cover an EEOC claim); *Dorner v. Polsinelli*, *White, Vardeman & Shalton, P.C.*, 856 F. Supp. 1483 (D. Kan. 1994) (plaintiff who accepted severance package released her claims against employer, even though she argued that her intent was not to do so).

      Therefore, for all of the reasons stated, the claims of Plaintiffs Brewer and White will be dismissed. The Court will issue an order consistent with this Memorandum Opinion.

cc:    Counsel of Record