UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-573-H

GERALD W. FLETCHER                                                  PLAINTIFF

V.

BRANCH BANKING & TRUST CORPORATION                      DEFENDANT

**MEMORANDUM OPINION**

The original Plaintiffs, former employees of the Bank of Louisville ("BOL"), charged that BOL's successor entity, Branch Banking & Trust Corporation ("BB&T") altered their longstanding employee benefit program in such a way as to illegally deprive them of benefits. This Court has previously dismissed all state statutory and breach of contract claims and as well as all claims by Plaintiffs Brewer and White. Only Plaintiff Gerald Fletcher's promissory estoppel claim remains.

BB&T operated under a written benefits plan, and Kentucky courts have not precisely defined what evidence would be necessary to support a promissory estoppel claim in such circumstances. For that reason, the Court determined to allow Plaintiff an opportunity to discover the facts that might support such a claim. BB&T has now moved for summary judgment.

I.

The general facts surrounding this case are discussed fully elsewhere. Only a brief

recitation is necessary.[1]

Under a policy implemented in 1976 and contained in its Employee Handbook, BOL allowed employees to accrue one and half days every two months of active, continuous employment, or nine days per year. Under the policy, eligible employees near retirement age could choose to use accrued sick days to retire earlier than age 65 or, alternatively, to retire after age 65 and receive a lump sum payment for the accrued days. In 1998, BOL distributed a brochure which described revisions to the sick day policy and permitted additional absences under the policy for "important personal and family matters." BOL incorporated the changes to its leave policy into the Employee Handbook. The handbook contained a number of disclaimers and special conditions:

> [The handbook] is not considered an expressed or implied contract between the Bank and any of its employees....Bank of Louisville retains the right to change or modify the information in this manual at any time. Employees will be given notice when changes are made.

Other provisions limited the use of sick/personal days to specified circumstances, required approval prior to use, limited the accrual of sick/personal days to a maximum of 66, and provided for their forfeiture upon termination of employment. Another portion of the Employee Handbook concerned payments to employees for accumulated sick/personal days. BOL kept track of the accrued days for each employee. The Court will refer to the entire benefit structure as the "Program."

In March, 2002, BB&T merged with BOL and assumed all of BOL's liabilities and

---

[1] In Section III.A. of this Memorandum, the Court will discuss the more specific evidence which might support the promissory estoppel claim.

obligations. In August, 2002, BB&T announced that it would discontinue the Program. Consistent with this announcement, BB&T has not paid Plaintiff for the sick/personal days he accrued under the Program. Following the merger, BB&T offered positions to some BOL employees, including Plaintiff. Plaintiff argues that he is entitled to payment for the sick/personal days he had already accrued at that point.

Initially, this Court dismissed Plaintiff's promissory estoppel claim along with the others. Upon reconsideration, the Court reinstated the promissory estoppel claim and allowed additional discovery. Following completion of discovery, BB&T moved for summary judgment on the promissory estoppel claim.

II.

Summary judgment is proper if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) . In applying Rule 56(c) , a court views the evidence in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court properly enters summary judgment where there is not sufficient evidence in support of the non-movant's case upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

This is a state law claim and this Court must apply Kentucky law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining Kentucky law only the decisions of the highest court of Kentucky bind this Court, *see Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 465 (1967), but the holdings of other state courts, though they are not absolute predictors, may nevertheless be useful as indications of what the highest state court may do. *Id.*

3

III.

The doctrine of promissory estoppel developed to prevent injustice from being inflicted upon those relying on a promise to do (or to refrain from doing) something. Where such a promise was wholly gratuitous, contract law afforded no remedy to the promisee if the promisor failed to follow through on his promise. Richard A. Lord, 4 Williston on Contracts, § 8:4 (4th ed. 1990). This was true even if the promisee had incurred detriment by relying on the promise. *Id.* Promissory estoppel, when applicable, "holds individuals liable on their promises despite the absence of consideration," and essentially forms a contract between promisor and promisee. *Id.*

In its most recent Memorandum Opinion, the Court determined that four elements are necessary to make out a claim of promissory estoppel under Kentucky law: (1) a promise; (2) which the promisor reasonably expected would induce action or inaction; (3) which the promisee reasonably relies upon; and (4) that justice will only be achieved if the promise is enforced. *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004); *Monumental Life Ins. Co. v. Nationwide Ret. Solutions, Inc.*, 242 F. Supp. 2d 438, 451 (W.D. Ky. 2003); *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F. Supp. 2d 714, 718 (W.D. Ky. 2001); *Meade Const. Co., Inc. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979); *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.,* 113 S.W.3d 636 (Ky. Ct. App. 2003); *Lichtefeld-Massaro, Inc. v. R. J. Manteuffel Co., Inc.*, 806 S.W.2d 42, 44 (Ky. Ct. App. 1991); Restatement (Second) of Contracts § 90(1) (1981)). The Court noted that "a key legal question here is whether a claim of promissory estoppel can proceed where the written documents specifically allow BB&T to change the leave policy." *Brewer v. Branch Banking & Trust Corp*.,

4

No. 04-573, 2005 WL 2100995 at *2 (W.D. Ky. August 26, 2005) ("*Brewer II*"). This is a difficult question.

A conceptual spectrum exists between a claim that a promisor should be held to a representation in the absence of any writing and a claim that a promisor should be held to a representation that alters acknowledged written employment terms. As to the former, the doctrine of promissory estoppel would seem more readily available, as no writing would contradict the representations. As to the latter, several courts have found promissory estoppel inapplicable. *See, e.g., Butler v. Progressive Cas. Ins. Co.*, No. 04-84, 2005 WL 1009621 (W.D. Ky. April 25, 2005)*; Rivermont*, 113 S.W.3d at 642.

Here, the facts present a situation between these two extremes, and one to which the Kentucky courts have not spoken clearly. Admittedly, there is no written *contract* between Plaintiff and Defendant discussing the terms of the Program. Yet the Employee Handbook and Benefits Brochures unambiguously define the terms of the Program. Consequently, when Plaintiff relies on a promissory estoppel theory here, he invokes the doctrine in a context closely analogous to that of the oral modification of a written contract.[2] And as every promissory estoppel claim turns on the particular evidence gathered in support of it, this Court concluded that "written authority to change benefits does not defeat all claims of promissory estoppel under all circumstances." *Brewer* II at *2.

---

[2]Plaintiff asserts that he is not claiming that he "is relying on oral promises that contradict anything in writing as is the case in most promissory estoppel cases." Response of Plaintiff at 1, No. 04-573 (W.D. Ky. July 16, 2007). This Court rejects the notion that representations regarding program terms that differ fundamentally from the terms laid out in the Employee Handbook could be characterized as anything *other* than contradictory to what appeared in that Handbook.

A.

A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981). By this Court's reckoning, the completed discovery reveals seven categories of Defendant's statements or interactions which Plaintiff considers promises:

1. Written statements in the Benefits Brochures following the 1998 changes. Specifically, Plaintiff points out that the Brochures stated that employees "will not lose what they have accrued" despite imposition of a 66-day maximum on accruals. Response of Plaintiff at 3-4, No. 04-573 (W.D. Ky. July 16, 2007).

2. Oral statements by members of the Human Resources department (Bill Moore, Dick Haas, and Bill Hornig) that the 1998 modifications "wouldn't affect" those who had accrued more than 66 days, and that days accrued in excess of 66 "would still be there for you." *Id.* at 4, 13-14.

3. Oral statements by "members of the [BOL] Executive Committee" that employees "would never lose what they had earned under the Program." Affidavit of Orson Oliver at *2-3.

4. Formal reprimands by supervisory personnel during employees' Quarterly Evaluations when an employee was found to have taken "excessive" sick/personal days, even if the number of days taken by the employee was fewer than the total number the employee had accrued. Response of Plaintiff at 4-6, No. 04-573 (W.D. Ky. July 16, 2007).

5. Assurances by supervisory personnel during Quarterly Evaluations and at other times that unused sick/personal days would accrue pursuant to the Program. *Id.*

6. Employees' biweekly pay stubs, which included itemization of accrued sick/personal time expressed both as a number of hours and as a dollar amount. *Id.* at 6-8.

7. Assurances by BB&T personnel that BB&T would honor all obligations to BOL personnel post-merger. *Id.* at 14; Affidavit of Orson Oliver at *3.

Some of these make a better case as promises than others. Regardless, the Court must carefully evaluate each to determine whether Plaintiffs can possibly make their case.

B.

Plaintiff essentially argues that any reference, endorsement, acknowledgment, or encouragement regarding the Program constituted a "promise" that Plaintiff would be "paid out" for his unused sick/personal days on terms that differed from those outlined in the Employee Handbook. In essence, he seems to say that such promises constituted vesting of benefits, or redefinition of the terms of the Program. He argues that the statements of Defendant's management guaranteed him payment for any accrued and unused sick/personal days. The Court sees the evidence as falling well short of these suggestions.

Statements in #1 and #2 discuss the impact of the 1998 changes, and only assert that the 1998 changes do not alter accrued benefits. They do not contradict BB&T's right to change the Program, nor do they change the vesting provisions (or lack thereof). Similarly, the statement in #3 suggests that whatever days had been accrued under the Program to that point could not be lost. This simply means what it says: at the time that statement was made, what had *accrued*

under the Program would not be lost. However, the Court has already determined that none of the Program benefits were *vested*, even if they had been accrued and their *accrual* was confirmed by management. *See Brewer v. Branch Banking & Trust Corp.*, No. 04-573 (W.D. Ky. May 16, 2005) ("*Brewer I*"). The statement does not directly change the vesting rules for benefits nor, more importantly, does it purport to directly contradict or supersede BB&T's written right to change the Program. The statements in #4, #5 and #6 amount to little more than expressions about the operation of the current Program. Finally, the statement in #7 merely states that BB&T intended to honor its obligations, whatever those might be, i.e. that BB&T would at that point adhere to the Program, not that BB&T was gratuitously incurring obligations which BOL itself had not incurred.

To avoid the consequences of the written statement that Defendant may "change or modify" the Program, Plaintiff at least must have evidence that Defendant promised not to do so. However, none of this evidence speaks directly to that issue. Plaintiff offers no statement by Defendant promising never to change the Program, no evidence that regardless of the written Program terms he would be entitled to payment for accrued sick/personal days, no statement that he could ignore the Employee Handbook's terms. *See* Deposition of Gerald Fletcher at 206-09, 258-59. Instead, he only presents evidence that employees were encouraged to participate in the sick/personal day Program, and that employees were told that they would not be deprived of accrued days in excess of sixty-six (66).

These statements are similar to those which this Court found insufficiently promissory in *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 799-800 (W.D. Ky. 2005), in which an employee claimed entitlement to benefits on terms he was allegedly promised by a

supervisor, even though those terms did not appear in and were contrary to the written terms of his employment. Applying Kentucky law, this Court found that the supervisor's comments were "offhand" and "ministerial," and could not properly be considered a promise for purposes of a promissory estoppel claim. *Id.* at 800. As in *Davis*, the supervisory personnel here seem only to be assuring Plaintiff that he would receive his accrued sick/personal days under the terms outlined in the Employee Handbook and Benefits Brochures. They did not suggest different terms; they did not promise specific new benefits. As in *Davis*, they made statements confirming the Program's existence, and they encouraged Plaintiff to participate in it.

The Court finds no evidence from which an inference can be drawn that Defendant made a direct promise never to change the Program or to operate the Program in any way other than as outlined in the Employee Handbook. Accordingly, Plaintiff cannot satisfy the first element of a promissory estoppel claim.

IV.

Even assuming the statements contained in Section III.A. constituted a promise of participating in a specific sick/personal day plan with terms that were contrary to those outlined in the Employee Handbook, Plaintiff cannot satisfy the reasonable reliance element of his claim. Both the *Rivermont* and *Butler* cases suggest that where an employee has specific knowledge of a written provision contradicting a subsequent oral representation, it is unreasonable as a matter of law for that employee to rely upon the oral representation, particularly a general one such as those here.

*Rivermont* is particularly instructive. There, the Kentucky Court of Appeals held that reasonable reliance was impossible as a matter of law (and promissory estoppel therefore

unavailable) where the party asserting it possessed documentary evidence contradicting the statements upon which he purported to rely. *Rivermont*, 113 S.W.3d at 642. Similarly, in *Butler,* Judge Russell, applying Kentucky law, found that an employee who had (1) signed an employment application confirming his at-will employment status and (2) annually received an employee handbook containing disclaimers very similar to those present in Defendant's Employee Handbook could not have reasonably relied on contradictory oral statements.[3] *Butler,* 2005 WL 1009621, at *4.

Plaintiff correctly notes distinctions between the facts of *Rivermont* and *Butler* and those here, most notably that the plaintiffs in both *Rivermont* and *Butler* had *signed* documents containing terms directly contradictory to those upon which they later purported to rely. *Id.* at *1. But these distinctions are not as significant as Plaintiff argues. The importance of a *signed* writing, in this Court's view, is that it conclusively demonstrates acknowledgment and understanding of contractual terms. *See, e.g., id.* at *4; *Rivermont*, 113 S.W.3d at 639. These cases suggest that reliance on oral statements contradicted by acknowledged, unequivocal written documents, can rarely, if ever, be deemed reasonable. Where such documents are present, only reliance on statements that specifically and categorically repudiate a particular written provision could be deemed reasonable. These principles are in accord with the general purpose of the doctrine of promissory estoppel, which exists to protect the promisee from a promisor who causes an injustice, *see* Lord, 4 Williston on Contracts § 8:4, as well as with the "narrowly confined" use of the doctrine by Kentucky courts. *Davis*, 399 F. Supp. 2d at 797

---

[3] Specifically, the *Butler* plaintiff's supervisors allegedly assured him that his employment would continue as long as he did his job and that before being fired, he would be subjected to a specified disciplinary scheme. *Butler,* 2005 WL 1009621, at *1.

(noting also that Kentucky courts "have not suggested an intent to expand the scope of promissory estoppel.").

Here, Plaintiff received a copy of the Employee Handbook which contained the written terms of the Program. He admits that he read and understood the portion of the Handbook stating that the Program does not create a contract. *See* Deposition of Gerald Fletcher at 70. Further, he admits that he realized that "[BOL] could change [the Program] for the future."[4] *Id.* Indeed, Plaintiff seems to suggest that he understood the Handbook language giving BOL the right to change the provisions of the Program at any time. *Id.* at 100. Plaintiff acknowledged understanding that in order to receive benefits, he would have had to remain with BOL (or its successor) until retirement. *Id.* at 104-105. The sum of this testimony constitutes the same kind of knowledge and acknowledgment of written terms found in *Rivermont* and *Butler*. The evidentiary impact is virtually the same as a written disclaimer.

The Court concludes that any reliance on the representations here would be unreasonable for the same reasons articulated in *Rivermont* and *Butler*. Therefore Plaintiff cannot establish the second element of his promissory estoppel claim.

V.

As noted above, this Court framed "a key legal question" in this case as "whether a claim of promissory estoppel can proceed where the written documents specifically allow BB&T to change the leave policy." *Brewer II* at *4. Allowing promissory estoppel to create contractual liability for Defendant under circumstances in which there is a clear, acknowledged writing and

---

[4] In the same testimony, Plaintiff asserts that he did not understand that BOL could change something that he had already "earned," *id.,* an issue this Court has addressed in a previous opinion. *Brewer I.* Therefore the distinction between the right to change the Program "retrospectively" and "prospectively" is untenable.

only vague "promises" to the contrary would expand the doctrine well beyond the narrow confines Kentucky courts have allowed. While the Court is unwilling to say that a promissory estoppel claim can *never* proceed when confronted by a clear and contradictory writing, the evidence before the Court is insufficient to allow it to do so here.

The Court will issue an order consistent with this Memorandum Opinion.

cc: Counsel of Record